1   Tatyana Evgenievna Drevaleva

2   3015 Clement St., Apt. 204,

3   San Francisco, CA, 94121

4   415-954-2116, tdrevaleva@gmail.com

5   Plaintiff in Pro Per

6

7                THE UNITED STATES DISTRICT COURT

8                   FOR NORTHERN CALIFORNIA

9

10                                                    LB

11                                        )
                                          )     CV 21 - 5348
12      Tatyana E. Drevaleva              )
                                          )
13                 *Plaintiff*,           )     Complaint for Damages.
                                          )
14              vs.                       )
                                          )
15                                        )     Demand for a Jury Trial.
                                          )
16   1)  Mr. William H. Alsup in his official  )
                                          )
17       and individual capacities as a District )
                                          )
18       Judge of the U.S. District Court for )
                                          )
19       the Northern District of California )
                                          )
20   2)  The U.S. District Court for the  )
                                          )
21       Northern District of California. )
                                          )
22                                        )
                                          )
23                 *Defendant*            )
                                          )
24   Facility:                            )
                                          )
25      Phillip Burton Federal Building   )
           & United States Courthouse,    )
26      450 Golden Gate Avenue            )
        San Francisco, CA 94102           )
27   ─────────────────────────────────── )

28

Complaint for Damages.

1. Comes now Plaintiff Tatyana Drevaleva and submits a Complaint for Damages against Mr. William H. Alsup in his both official and individual capacities as a District Judge of the U.S. District Court for the Northern District of California.

**2. Jurisdiction.** The U.S. District Court has jurisdiction over this lawsuit because:

1) A Federal Judge was named a Defendant in this lawsuit

2) This lawsuit involves the violations of the U.S. Constitution

3) This lawsuit involves the deprivation of my civil rights in violation of 42 U.S.C. § 1983

4) This lawsuit involves a **possible** civil conspiracy that was aimed to deprive me of my civil rights in violation of 42 U.S.C. § 1985 with:

   a) Assistant U.S. Attorney Ms. Kimberly Robinson

   b) Manager of the New Mexico VA Health Care System Ms. Carla Dunkelberger

   c) Assistant Manager of the New Mexico VA Health Care System Mr. Phil Johnson

   d) Former Secretary of the U.S. Department of Veterans Affairs Mr. Robert Wilkie

5) This lawsuit involves a **possible** criminal conspiracy with Assistant U.S. Attorney Ms. Kimberly Robinson that was aimed to cover up a possible criminal activity of Ms. Robinson who possibly filed a false Declaration of Carla Dunkelberger under the penalty of perjury and who filed severely redacted Exhibits to this Declaration in the lawsuit No. 3:18-cv-03748-JCS (Doc. No. 50-1 and 50-2.) I believe that Alsup intentionally, criminally, and maliciously dismissed my lawsuit No. 3:18-cv-03748-JCS because Alsup **knew** that the alleged Declaration of Carla Dunkelberger **under the penalty of perjury** could have been possibly fabricated, and Alsup wanted to protect Attorney Robinson from a criminal prosecution for filing this Declaration. Judging my lawsuit No.3:18-cv-03748-JCS, Mr. Alsup committed multiple felonies because:

   (i) He obstructed Justice and tampered with the evidence in violation of 18 U.S.C. Chapter 73 – Obstruction of Justice

Complaint for Damages.

(ii) He covered up a possible criminal activity of Attorney Robinson who possibly filed a fabricated Declaration of Carla Dunkelberger under the penalty of perjury, see 18 U.S.C. § 241

(iii) He criminally, intentionally, and maliciously denied my right to work on account of sex, see 18 U.S.C. § 246.

**3. Venue** is appropriate at this Court because a related lawsuit No. 3:18-cv-03748-JCS and other related lawsuits are pending before the Hon. Judge Joseph C. Spero.

4. Plaintiff Tatyana Drevaleva is a Plaintiff in the lawsuit No/ 3:18-cv-03748-JCS *Drevaleva v. 1) The U.S. Department of Veterans Affairs, 2) Mr. Peter O'Rourke, Acting United States Secretary of Veterans Affairs.*

5. Defendant Mr. William Alsup was a District Judge who judged my lawsuit No. 3:18-cv-03748-JCS from October 05, 2018 to March 11, 2021 when he recused himself from judging my lawsuit.

**Statement of Facts.**

6. On April 02, 2017, I was appointed to a full time job as a Title 38 Hybrid Medical Instrument Technician (MIT) Electrocardiograph (EKG) at the New Mexico Veterans Affairs Health Care System (also to be cited as the Raymond G. Murphy VA Medical Center) in Albuquerque, NM. Prior to being appointed, I was fully qualified for this job, I possessed a certificate of an Electrocardiography (EKG) Technician that was issued by the City College of San Francisco, I possessed a few years of experience in leading hospitals of Northern California, and I possessed good Letters of Reference from my previous employers. I also possessed a good Performance Evaluation from the San Francisco VA Medical Center where my performance was rated as outstanding and exceptional. On April 03, 2017, I started to undergo a New Employee Orientation at the Raymond G. Murphy VAMC. I was appointed to work as an MIT (EKG) observing cardiac monitors at the 5D (Telemetry) Unit. The Manager of this Unit was Ms. Carla Dunkelberger. The Assistant Manager of this Unit was Mr. Phil Johnson.

7. On April 18, 2021, I approached Ms. Dunkelberger, and I informed her:

Complaint for Damages.

a) that I was 50 yo at that time

b) that I was married twice but my ex-husbands didn't want to give me children

c) that I dated some other boy friends who also didn't want to give me children

d) that I performed approximately eight In-Utero Insemination (IUI) procedures at Kaiser Permanente in San Francisco without success

e) that I spent 2.5 years in Russia from 2014 to 2016 for the purpose of undergoing a complete medical examination and performing In-Vitro Fertilization (IVF) procedures

f) that, as a citizen of the Russian Federation, I had an opportunity to perform an IVF procedure for free of charge for me and at the expense of the Russian Government

g) that in order for me to perform another free of charge IVF procedure, I needed to wait in line for approximately 8-10 months

h) that I already waited in line for approximately 8 months to perform another IVF procedure in Russia

i) that there was no way for me to financially afford to perform an In-Vitro Fertilization procedure in the United States because of a high price (approximately 15 thousand U.S. dollars for one IVF attempt), and my salary was 40 thousand U.S. dollars per year

j) that **in the future** I would request a time off to go to Russia to perform another IVF procedure

k) that I was the only family member in the United States

l) that I didn't have a permanent place of living in the United States

m) that I was renting a room in Albuquerque, NM

n) that I didn't have a car

o) that my co-workers were courteous to me, and they frequently drove me to work and back home from my work

p) that I was taking hormonal pills named Jeanine that were prescribed by my Russian OB/GYN, that I brought from Russia, and that were not available in the United States

Complaint for Damages.

q) that I was taking one pill a day, and that I couldn't afford to miss a pill

r) on April 18, 2017, I sincerely thought that I had a supply of my hormonal pills for a few months.

8. After I informed Ms. Dunkelberger about everything stated above, Ms. Dunkelberger's face immediately became very unpleased. She asked me whether I would request another time off to go to Russia for a follow up. I answered that I didn't know. On April 18, 2017, Ms. Dunkelberger immediately responded that she couldn't pay me if I am not working. She informed me that I was not eligible for Leave Without pay pursuant to the Family and Medical Leave Act (the F.M.L.A.) because I didn't work at the VAMC for one year. On April 18, 2017, Ms. Dunkelberger told me that, in order for me to request a Leave Without Pay, I needed to submit a medical document that needed to be translated into English language, that I didn't have a right to translate the medical document myself, that only a certified translator had a right to translate this medical document into English language, that Ms. Dunkelberger didn't have a right to approve my request for Leave without pay, that Ms. Dunkelberger would submit my Request for a LWOP to Dr. Prince, Associate Director of Patient Care Services, who would be the one to approve or deny her request. On April 18, 2017, Ms. Dunkelberger gave me a Memorandum (unnumbered) that described the leave policies of the Raymond G. Murphy VAMC, and I put my signature thus acknowledging that I understood the leave policies that were described in this Memorandum.

9. In the beginning of May 2017, I discovered that I had made a mistake, and that I had only ten hormonal pills left which was a supply for only ten days. I am repeating that I was taking one hormonal pills every day, these pills were in aid of the IVF procedure, I couldn't afford to miss a pill, and these pills were not available in the United States. I called my Russian OB/GYN, and I found out that my turn in line to perform a free of charge IVF procedure had just come up, and therefore I **urgently** needed to go to Russia to refill a prescription of my hormonal pills and to perform another IVF procedure.

10. On approximately May 10, 2017, I approached Ms. Dunkelberger, and I informed her that I had made a mistake, that I had only ten hormonal pills left, that I called my Russian

Complaint for Damages.

OB/GYN and found out that my turn in line to perform another IVF attempt had just come up, and that I **urgently** needed to go to Russia to refill a prescription of my hormonal pills and to perform an IVF procedure. I also informed Ms. Dunkelberger that I had attempted to find the medicine Jeanine in the United States, that I saw an advertisement of a Russian pharmacy in New York on the Internet, that this Russian pharmacy claimed that it had this medicine in sale, that I called this pharmacy many times but nobody answered, that I knew for sure that the medicine Jeanine was not approved by the U.S. Food and Drug Administration to be used and sold in the United States, and that any attempt to sell Jeanine in the United States was illegal.

11. On May 10, 2017, Ms. Dunkelberger told me that, in order for me to request a Leave Without Pay, I needed to submit a medical certification on English language, that I didn't have a right to translate this medical documentation into English myself, that I needed to use only a certified translator to translate this medical documentation into English language, that Ms. Dunkelberger would not have authority to approve or to deny my request for a LWOP, and that Ms. Dunkelberger would submit my Request for a LWOP to Dr. Prince who would approve or deny this request.

12. After my May 10, 2017 conversation with Ms. Dunkelberger, I immediately contacted with my Russian OB/GYN, and I requested a medical document that would confirm that I needed to go to Russia to perform an In-Vitro Fertilization (IVF) procedure. It took seven calendar days for my doctor to issue this documentation. The secretary of my doctor promised me that she would email me this medical certification on approximately May 17, 2017.

13. On May 17, 2017, Ms. Dunkelberger was out of office. On May 17, 2017, I worked a night shift together with my Russian speaking co-worker, also a Medical Instrument Technician (EKG) Ms. Nadya Das.

14. On May 17, 2017, I approached Assistant Manager Mr. Phil Johnson, and I told him the same facts that I had told Ms. Dunkelberger – that I was 50 yo at that time, that I was married twice but my ex-husbands didn't want to give me children, that I dated other boyfriends who also didn't give me children, that I performed eight In-Utero Inseminations at Kaiser Permanente with donor's sperm, that I spent 2.5 years in Russia from 2014 to 2016 for the purpose of undergoing

a complete medical examination and performing IVF procedures, that I couldn't afford to perform an IVF procedure in the United States because of its high price, that I was taking hormonal pills Jeanine that were in aid of the IVF procedure, that I brought from Russia, and that were not available in the United States, that on May 17, 2017 I had only three pills left which was for three days, that I couldn't afford to miss a pill, that I urgently needed to go to Russia to refill a prescription of my hormonal pills and to perform an IVF procedure in Russia at the expense of the Russian Government, that I already spoke to Ms. Dunkelberger about my need to go to Russia to refill a prescription of my hormonal pills and to perform an IVF attempt, that Ms. Dunkelberger told me to bring my medical documentation on English language, that I already contacted with my Russian doctor and requested my medical documentation, that I expected to receive this medical documentation on May 17-18, 2017, and that this documentation would be on Russian language, that I didn't have an opportunity to stay longer in the United States to find a certified translator because on May 17, 2017 I had only three hormonal pills left which was a supply for three days, that I needed to spend approximately two days to go from Albuquerque, NM to Novosibirsk, Russia, that I would find a certified translator in Russia, that I would email a translated document to both Ms. Dunkelberger and Mr. Johnson from Russia, that I asked my Russian speaking co-worker Ms. Nadya Das to informally translate my medical document into English for Ms. Dunkelberger and Mr. Johnson until I obtain a formally translated version from a certified translator in Russia. I asked Mr. Johnson to allow me to go to Russia to refill a prescription of my hormonal pills and to perform an IVF attempt.

15. On May 17, 2017, Mr. Johnson seemed very understanding to my situation. He gave me an OPM 71 form, and he told me to fill it out and to request a Leave Without Pay. On May 17, 2017, Mr. Johnson said to me, "If you need to go – go!" On May 17, 2017, I filled out the OPM 71 form, I requested a leave Without Pay from May 18 to July 07, 2017, and I slipped this form under the door of the Manager's office as Mr. Johnson had told me to do.

16. During the night shift from May 17 to May 18, 2017, I received my medical documentation in the email from my Russian doctor. Ms. Nadya Das is a witness that I actually received my medical documentation during my night shift from May 17 to May 18, 2017. I asked

Complaint for Damages.

1   Ms. Das to translate this medical documentation into English language for Ms. Dunkelberger and

2   Mr. Johnson until I can find a certified translator in Russia.

3         17. On May 18, 2017 at 9.02 AM, I emailed my medical documentation to both Ms.

4   Dunkelberger and Mr. Johnson. On May 18, 2017 in the evening, I left to Russia. On May

5   30,2017, I emailed a translated into English language version of my medical document to both

6   Ms. Dunkelberger and Mr. Johnson.

7         18. While being in Russia, I started to undergo a complete medical examination.

8   Unpleasantly, the doctor found a uterine polyp that the doctor ordered to be removed. In June

9   2017, I underwent an unexpected surgery, and the doctor removed the uterine polyp. Afterwards,

10  I needed to wait for ten days until I received a pathology result. Afterwards, the doctor ordered to

11  undergo the blood hormonal tests for the Folliclestimulating Hormone (the FSH) and for the

12  Antimullerian Hormone (the AMH) on a definite day of the menstrual cycle. Therefore, I needed

13  to wait for another approximately 8-10 days to undergo these hormonal blood tests. I realized

14  that I needed to stay in Russia for a longer time than I had initially expected, and that I would not

15  be able to return back to work at the Raymond G. Murphy VAMC before July 07, 2017. I

16  contacted with my Russian doctor, and I requested the second medical documentation that would

17  explain to my employer that I needed to stay in Russia for an additional time.

18        19. On July 01, 2017, I emailed both Ms. Dunkelberger and Mr. Johnson, and I explained

19  that I had undergone an unexpected gynecological surgery, that I spent time waiting for the

20  pathology results, that I needed to wait another few days to perform my hormonal blood tests for

21  the FSH and the AMH, that I requested the second medical documentation from my Russian

22  OB/GYN, that I needed to spend more time in Russia for my medical examination and treatment,

23  and that I would not be able to return back to work at the Raymond G. Murphy VAMC until July

24  07, 2017. On July 01, 2017, I requested Ms. Dunkelberger and Mr. Johnson to send me another

25  OPM 71 form, so I could fill it out, and I requested to allow me to stay in Russia for an

26  additional time.

27        20. On July 03, 2017, I received an email from Ms. Dunkelberger with a Termination

28  Letter that informed me that I had been fired from my full time job on June 30, 2017 "for

Complaint for Damages.

1  attendance issues." Prior to receiving this email, I was not given a Notice and an opportunity to

2  be heard.

3       21. On July 03, 2017, I emailed Ms. Dunkelberger, and I asked her why she fired me. Ms.

4  Dunkelberger never responded. I timely contacted with the EEO Counselor.

5       22. On July 14, 2017, I emailed my second medical documentation on English language

6  to both Ms. Dunkelberger and Mr. Johnson. During July and August 2017, I emailed both Ms.

7  Dunkelberger and Mr. Johnson a few more times, and I informed them about my progress

8  undergoing a complete medical examination in Russia and getting prepared for an actual IVF

9  procedure. I never heard back from them.

10      23. On August 17, 2017, I arrived back to the United States after an unsuccessful IVF

11 attempt in Russia. Because I had no longer a job in Albuquerque, NM, and because I was unable

12 to pay rent, I relocated to California, and I stayed with my friends.

13      24. In approximately September 2017, I spoke over the phone with Ms. Das, and she told

14 me that Ms. Dunkelberger had replaced me with two young male employees Monitor

15 Technicians. One of them was 30 yo, and another one was 35 yo. One of them was already

16 married, and he had children. I realized that I was discriminated against my desire to have a

17 children, against my sex/gender, against my age, and against my temporary disability that was

18 related to taking a time off to go to Russia to perform an IVF procedure.

19      25. On September 07, 2017, I had a video Mediation with Ms. Dunkelberger. During the

20 Mediation, Ms. Dunkelberger said to me that my May 17, 2017 Request for a LWOP had been

21 denied by Dr. Prince. Therefore, September 07, 2017 was the first day when I found out that my

22 May 17, 2017 Request for a LWOP had been denied.

23      26. On September 07, 2017, during the Mediation, Ms. Dunkelberger said to me that on

24 June 12, 2017 the VAMC mailed a letter with my denied request for a LWOP to my home postal

25 address in Albuquerque, NM. I was very surprised about the fact that the VAMC mailed a letter

26 to my home postal address in Albuquerque, NM because both Ms. Dunkelberger and Mr.

27 Johnson knew that I was unable to receive this letter and to respond because at that to me I was

28 in Russia. On September 07, 2017, Ms. Dunkelberger said to me that she had followed the

Complaint for Damages.

1    VAMC's policies that mandated her to send a piece of mail to the home postal address that was

2    on file. I asked Ms. Dunkelberger why she didn't email this letter to me. Ms. Dunkelberger

3    responded that she hadn't emailed this letter to me because it was against the VAMC's policies,

4    and because this letter was not encrypted. On September 07, 2017, I asked Ms. Dunkelberger to

5    reinstate me back to work but she refused.

6         27. After the unsuccessful September 07, 2017 Mediation, I filed an Unemployment

7    Insurance (IU) claim with the Employment Development Department (EDD.) However, my UI

8    claim was denied because the Raymond G. Murphy VAMC said to the EDD that I had been fired

9    for cause because I went absent without leave, and because I didn't provide my medical

10   documentation until after I returned back to the United States in August 2017.

11        28. In 2018, I was receiving General Assistance in Monterey County where I cleaned

12   streets removing trash and cigarette ends together with former convicted felons who served many

13   years in prison. I was afraid of these guys.

14        29. In 2018, I obtained a full time job as an MIT (EKG) at the Minneapolis VAMC.

15   However, after the Hiring Official of the Minneapolis VAMC Mr. Joseph Glazer spoke over the

16   phone with Ms. Dunkelberger, and after she said to him that I had been fired for failure to follow

17   the proper steps to obtain a LWOP, the Minneapolis VAMC rescinded my full time job offer.

18   The Minneapolis VAMC refused to accept into its consideration my explanations that my 2017

19   trip to Russia was related to the IVF procedure, and that this trip was verbally approved by Mr.

20   Johnson.

21        30. Also, in 2018, I was not hired for a full time job as an MIT (EKG) by the West Los

22   Angeles VAMC after, during the job interview, I said that I had been fired from the Raymond G.

23   Murphy VAMC in 2017 for taking a time off to go to Russia to solve some of my medical issues.

24        31. After my unsuccessful September 07, 2017 Mediation, I processed a formal EEO

25   Complaint. The Office of Resolution Management didn't issue any Determination. On June 25,

26   2018, I filed a lawsuit No. 3:18-cv-03748-JCS *Drevaleva v. 1) The U.S. Department of Veterans*

27   *Affairs, 2) Mr. Peter O'Rourke, Acting United States Secretary of Veterans Affairs* at the U.S.

28   District Court for the Northern District of California. After multiple reassignments, my lawsuit

Complaint for Damages.

1  was assigned to Mr. William Alsup (it is beyond my ability to name this person "the Honorable

2  Judge,")

3       32. Since the very beginning of the litigation, Mr. Alsup exhibited fierce bias and

4  prejudice towards me. He refused to appoint a Counsel to assist me with my lawsuit despite Mr.

5  Alsup **knew** that I was the only family member in the United States, that I was not a lawyer, that

6  English was my second language, that I was suffering from the absence of money, and that I

7  didn't have an opportunity to continue a treatment of my infertility.

8       33. In my lawsuit No. 3:18-cv-03748-JCS, I listed three sets of the causes of action:

9       1) Discrimination   Causes   of   Action   (Pregnancy   Discrimination,   Sex/Gender

10            Discrimination, Age Discrimination, and Disability Discrimination, Failure to

11            Provide with Reasonable Accommodations)

12       2) Libel and the Intentional Infliction of Emotional Distress (please, notice that I didn't

13            label these causes of action as the F.T.C.A. causes of action)

14       3) Deprivation of Liberty and Property without the Due Process of the Law in violation

15            of both the Substantive Due Process Clause and the Procedural Due Process Clause of

16            the Fifth Amendment to the U.S. Constitution.

17       34. Defendants the U.S. Department of Veterans Affairs and Secretary of the U.S.

18  Department of Veterans Affairs were served with a Summons and a Complaint No. 3:18-cv-

19  03748-JCS. The Secretary had an obligation to follow the requirements of 38 CFR § 14.514(a),

20       "(a) *Suits against United States or Department of Veterans Affairs officials.* When a

21  suit involving any activities of the Department of Veterans Affairs is filed against the United

22  States **or the Secretary** or a suit is filed against any employee of the Department of Veterans

23  Affairs in which is involved any official action of the employee, not covered by the provisions of

24  §§ 14.600 through 14.617, a copy of the petition **will be forwarded to the General Counsel**

25  **who will take necessary action to obtain the pertinent facts, cooperate with or receive the**

26  **cooperation of the Department of Justice and, where indicated, advise the Regional**

27  **Counsel of any further action required.**"

28

Complaint for Damages.

35. On October 09, 2018, Assistant U.S. Attorney Ms. Claire Cormier filed a Motion to Dismiss my lawsuit No. 3:18-cv-03748-JCS. Please, notice that this Motion was not accompanied by a Declaration that was signed by either the Official of the U.D. Department of Veterans Affairs and/or by Mr. Cormier under the penalty of perjury and under the Federal laws that:

1) Ms. Cormier represented the true and genuine interests of Defendants the U.S. Department of Veterans Affairs and Secretary of the U.S. Department of Veterans Affairs

2) The Motion to Dismiss was based on the truthful facts of the case

3) The U.S. Department of Veterans Affairs and Secretary followed the provisions of 38 CFR § 14.514(a)

4) The U. S. Department of Veterans Affairs and Secretary collected the truthful facts of the case

5) The U. S. Department of Veterans Affairs and Secretary coordinated with the U.S. Department of Justice and transmitted the truthful facts of the case to the U.S. Department of Justice

6) The U. S. Department of Veterans Affairs and Secretary authorized the U.S. Department of Justice to represent both the U. S. Department of Veterans Affairs and Secretary in the lawsuit No. 3:18-cv-03748-JCS

7) Everything Ms. Cormier wrote in her Motion to Dismiss my lawsuit No.3:18-cv-03748-JCS was a true and genuine point of view of both the U. S. Department of Veterans Affairs and Secretary

8) Everything Ms. Cormier wrote in her Motion to Dismiss my lawsuit No.3:18-cv-03748-JCS was true and correct.

36. Therefore, the October 09, 2018 Motion to Dismiss violated both 28 U.S.C. § 1746 and the F.R.C.P. Rule 11(b.) Therefore, this Motion to Dismiss was hearsay that was not supposed to be reviewed.

Complaint for Damages.

37. On October 19, 2018, I filed a Motion for Preliminary Injunction where I demanded to IMMEDIATELY reinstate me back to work at any VAMC and to award me with a full amount of my lost salary and benefits as a result of discrimination and unlawful termination of my employment from the Raymond G. Murphy VAMC in 2017.

38. On November 02, 2018, Assistant U.S. Attorney Ms. Kimberly Robinson filed an Opposition to my Motion for Preliminary Injunction (Doc. No. 50.) With this Opposition, Ms. Robinson filed a so-called Declaration of Carla Dunkelberger (Doc. No. 50-1.) Please, notice that this Declaration was **under the penalty of perjury**, that this Declaration **didn't** have a real signature of Ms. Dunkelberger, and that this Declaration had an s/signature of Ms. Dunkelberger.

18  I declare under penalty of perjury that the foregoing is true and correct. Executed on November
19  1. 2018 at Albuquerque. New Mexico.

20
21                              /s/Carla Dunkelberger, RN MSN MBA
                                CARLA DUNKELBERGER. RN MSN MBA

39. In this Declaration, it was written that I had been properly fired from my full time job at the Raymond G. Murphy VAMCX for failure to follow the proper steps to obtain a LWOP and for subsequent absence without leave.

40. In 2018, I had a strange feeling that something is wrong with this Declaration. However, I couldn't explain what this feeling was.

41. With this Declaration, Ms. Robinson filed severely redacted Exhibits. Also, in 2018, I had a strange feeling about these exhibits but I couldn't explain what this feeling was.

42. In 2020, I realized that this Declaration could have ben possibly fabricated. I thoroughly considered the facts of the case, and I got to the conclusion that Ms. Dunkelberger didn't write this Declaration herself, and Ms. Dunkelberger didn't redact the Exhibits to this Declaration herself. Please, notice that the person who redacted the Exhibits deleted all **facts** that described the scope of my disability.

43. Please, notice that, since Ms. Robinson filed the Declaration of Carla Dunkelberger and the severely redacted Exhibits to this Declaration on November 02, 2018, on the same day which was November 02, 2018 Alsup started his series of criminal actions **denying** every my

Complaint for Damages.

1    request, every my Motion, every my Motion for Reconsideration, and subjecting me to tort and

2    humiliation. Please, notice that, denying all my requests and Motions, Alsup didn't follow the

3    applicable Federal laws, and he didn't follow the case laws that were decided by the U.S.

4    Supreme Court and by the Circuits.

5        44. On December 03, 2018, Alsup granted Ms. Cormier's Motion to Dismiss in full with

6    leave to amend and denied my Motion for Preliminary Injunction. Doing this, he converted the

7    Motion to Dismiss into the Motion for Summary Judgment **without** giving me an opportunity to

8    resent the material facts of the case. Also, Alsup started his series of harassing procrastinations,

9    and he unlawfully and criminally delayed a resolution of my lawsuit for many months.

10       45. Please, notice that Alsup improperly continued a Case Management Conference and

11   never allowed Discovery.

12       46. I amended my Complaint, and Alsup immediately started a seven month episode of

13   procrastination and harassing me covering his criminal actions by the December 2018

14   Governmental shutdown. Alsup didn't react on my begging that I was severely suffering from

15   the absence of a job and money, from the absence of a permanent place of living, and from

16   deprivation of basic needs.

17       47. I filed an Affidavit if Bias and Prejudice that Alsup denied giving me false promises

18   to conduct fair hearings and proceedings for a Pro Se Plaintiff. Also, Alsup recklessly

19   disregarded all material pieces of evidence that I filed in support to my claims, and Alsup

20   reckless;y disregarded all valid legal arguments.

21       48. In 2019, I was evicted from my place of living in Daly City for my inability to pay

22   rent. I notified Alsup multiple times that I was suffering from the absence of a job and from the

23   absence of money, that I was suffering from my inability to continue a treatment of my

24   infertility, and I asked Alsup multiple times to shorten the time to process my lawsuit. However,

25   despite I demonstrated by the preponderance of the evidence that I was entitled for a speedy

26   relief, Alsup never have me this relief, and Alsup continued to cruelly torture and humiliate me.

27       49. Alsup denied all my Motions for Reconsideration. On July 11, 2019, during the

28   hearing of my Motion for Leave to Amend a Complaint, Alsup accused me in lying in front if the

Complaint for Damages.

1 | audience, refused to hear the merits of my Motion for Leave to Amend my Complaint, dismissed
2 | my Amended Complaint, accused me in leaving my full time job at the Raymond G. Murphy
3 | VAMC without permission, and entered a Judgment in favor of Defendants.

4 |     50. Afterwards, I filed three Motions to Vacate the judgment that Alsup all denied. In
5 | 2019, during the litigation of my lawsuit No. 4:19-cv-02665-HSG, I incidentally discovered that
6 | on June 12, 2017, during my stay in Russia, Ms. Dunkelberger hired young male employee Mr.
7 | David Williams. Please, notice that on the same day June 12, 2017 Ms. Dunkelberger mailed a
8 | letter to my home postal address in Albuquerque, NM asserting that I hadn't provided the
9 | VAMC with my medical documentation on English language, demanding me to immediately
10 | return back to work to the VAMC, and threatening to fire me if I don't return. Please, notice that
11 | the June 12, 2017 letter of Ms. Dunkelberger was unclaimed because at that time I was in Russia,
12 | and I was unable to receive this letter and to respond. Please, notice that this letter was returned
13 | back to the VAMC. Please, notice that, despite the letter was returned back to the VAMC, Ms.
14 | Dunkelberger accused me in not responding to this letter, accused me in not returning back to
15 | work, and she fired me.

16 |     51. Please, notice that, despite I described to Alsup multiple times the incident with the
17 | June 12, 2017 letter that was mailed to my home postal address in Albuquerque, NM, Alsup
18 | never discussed this incident in his both December 03, 2018 and July 11, 2019 Orders that
19 | granted Motions to Dismiss.

20 |     52. Please, notice that, after I informed Alsup about a new piece of evidence that was a
21 | material fact of the case that on June 12, 2018 Ms. Dunkelberger hired young male employee
22 | Mr. David Williams, and after I explained to Alsup that the fact of hiring Mr. Williams was a
23 | direct evidence of discrimination, Alsup still didn't change his mind, he didn't vacate his
24 | Judgment, and he didn't reinstate me back to work. Instead, Alsup dismissed four my other
25 | lawsuits No. 4:19-cv-01454-HSG, 4:19-cv-02665-HSG, 4:19-cv-05927-HSG, and 4:20-cv-
26 | 00820-HSG. Alsup denied all my Motions to Vacate the Judgments, revoked my IFP status on
27 | Appeal No. 20-16109 after the lawsuit No. 4:19-cv-02665-HSG, accused me in filing a
28 | "frivolous and duplicative" lawsuit No. 4:20-cv-00820-HSG, constantly accused me in leaving

Complaint for Damages.

1   my full time job at the Raymond G. Murphy VAMC without permission, and accused me in

2   abusing my IFP status.

3       53. In 2020, I realized that the so-called Declaration of Carla Dunkelberger under the

4   penalty of perjury could have been possibly fabricated. I believe that Ms. Dunkelberger didn't

5   write this declaration *herself*, and she didn't redact the Exhibits to this Declaration *herself*. I

6   started to realize that Alsup could have possibly **known** that the Declaration of Carla

7   Dunkelberger under the penalty of perjury could have possibly fabricated, and Alsup

8   intentionally, criminally, and maliciously always ruled in favor of Attorney Robinson who filed

9   this Declaration. I believe that Alsup intentionally and criminally always accused me in leaving

10  my job without permission (even after I demonstrated a material piece of evidence that was the

11  EEO Investigative File with Mr. Johnson's testimony that clearly stated that Mr. Johnson had

12  verbally **allowed** me to go to Russia to refill a prescription of my hormonal pills and to perform

13  an IVF attempt.)

14      54. On March 11, 2021, Alsup finally recused himself from judging my lawsuits. I

15  believe that he recused himself after I had informed him in a not related lawsuit No. 3:20-cv-

16  07017-EMC that I suspected that the Declaration of Ms. Dunkelberger under the penalty of

17  perjury could have been possibly fabricated.

18      55. Because of Alsup's criminal and cruel actions towards me, I have severely suffered

19  from a deprivation of my basic civil rights, In July 2019, after Alsup entered a Judgment in favor

20  of Federal Defendants, I spent a week in a homeless shelter without any hope to ever find any

21  job. I was deprived of an opportunity to worm in mh professional field as a Monitor Technician.

22  Instead, I was subjected to slavery and involuntary servitude, and I was compelled to work as a

23  live-in Caregiver taking care of elderly physically and mentally ill people who abused me.

24      56. I am filing a lawsuit against Alsup because he deprived me of my Constitutional

25  rights, because he tortured and humiliated me for 2.5 years, because he recklessly disregarded

26  the facts of the case and the valid legal arguments, because he recklessly disregarded the material

27  pieces of evidence, because he possibly criminally conspired with Attorney Robinson, and I

28  suspect that Alsup could have possibly conspired with Ms. Dunkelberger and Secretary Wilkie

Complaint for Damages.

1    with a criminal goal to deny my right for relief on account of sex. I am emphasizing that my

2    allegations of a criminal conspiracy are only my allegations, and I don't have any direct evidence

3    of the conspiracy.

4        57. In this Complaint, I will only list the Causes of Action. Please, notice that I am still

5    experiencing a severe emotional distress. It is difficult for me to write this Complaint. I preserve

6    the right to amend and to explain my Causes of Action in my subsequent pleadings. Right now, I

7    am emotionally unable to fully explain every Cause of Action.

8

9    **58. First Cause of Cation.** Deprivation of my Constitutional right to be a Parent.

10       a)  The rights of parents to the care, custody and nurture of their children is of such

11           character that it cannot be denied without violating those fundamental principles

12           of liberty and justice which lie at the base of all our civil and political institutions,

13           and such right is a fundamental right protected by this amendment (First) and

14           Amendments 5, 9, and 14. *Doe v. Irwin*, 441 F Supp 1247; U.S. D.C. of

15           Michigan, (1985).

16       b)  Loss of First Amendment Freedoms, for even minimal periods of time,

17           unquestionably constitutes irreparable injury. Though First Amendment rights are

18           not absolute, they may be curtailed only by interests of vital importance, the

19           burden of proving which rests on their government. *Elrod v. Burns*, 96 S Ct 2673;

20           427 US 347, (1976).

21       c)  Law and court procedures that are "fair on their faces" but administered "with an

22           evil eye or a heavy hand" was discriminatory and violates the equal protection

23           clause of the Fourteenth Amendment. *Yick Wo v. Hopkins*, 118 US 356, (1886).

24       d)  Even when blood relationships are strained, parents retain vital interest in

25           preventing irretrievable destruction of their family life; if anything, persons faced

26           with forced dissolution of their parental rights have more critical need for

27           procedural protections than do those resisting state intervention into ongoing

28           family affairs. *Santosky v. Kramer*, 102 S Ct 1388; 455 US 745, (1982).

Complaint for Damages.

e) Parents <u>have a fundamental constitutionally protected interest in continuity of legal bond with their children.</u> *Matter of Delaney*, 617 P 2d 886, Oklahoma (1980). .

f) The liberty interest of the family encompasses an interest in retaining custody of one's children and, thus, a state may not interfere with a parent's custodial rights absent due process protections. *Langton v. Maloney*, 527 F Supp 538, D.C. Conn. (1981).

g) Parent's right to custody of child is a right encompassed within protection of this amendment which may not be interfered with under guise of protecting public interest by legislative action which is arbitrary or without reasonable relation to some purpose within competency of state to effect. *Regenold v. Baby Fold, Inc.*, 369 NE 2d 858; 68 Ill 2d 419, appeal dismissed 98 S Ct 1598, 435 US 963, IL, (1977).

h) Parent's interest in custody of her children is a liberty interest which has received considerable constitutional protection; a parent who is deprived of custody of his or her child, even though temporarily, suffers thereby grievous loss and such loss deserves extensive due process protection. *In the Interest of Cooper*, 621 P 2d 437; 5 Kansas App Div 2d 584, (1980).

i) The Due Process Clause of the Fourteenth Amendment requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for individual liberty interests at stake. *Bell v. City of Milwaukee*, 746 F 2d 1205; US Ct App 7th Cir WI, (1984).

j) Father enjoys the right to associate with his children which is guaranteed by this amendment (First) as incorporated in Amendment 14, or which is embodied in the concept of "liberty" as that word is used in the Due Process Clause of the 14th Amendment and Equal Protection Clause of the 14th Amendment. *Mabra v. Schmidt*, 356 F Supp 620; DC, WI (1973).

Complaint for Damages.

k) "Separated as our issue is from that of the future interests of the children, we have before us the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her in personam. Rights far more precious to appellant than property rights will be cut off if she is to be bound by the Wisconsin award of custody." *May v. Anderson*, 345 US 528, 533; 73 S Ct 840, 843, (1952).

l) A parent's right to care and companionship of his or her children are so fundamental, as to be guaranteed protection under the First, Ninth, and Fourteenth Amendments of the United States Constitution. *In re: J.S. and C.*, 324 A 2d 90; supra 129 NJ Super, at 489.

m) The Court stressed, "the parent-child relationship is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection." A parent's interest in the companionship, care, custody and management of his or her children rises to a constitutionally secured right, given the centrality of family life as the focus for personal meaning and responsibility. *Stanley v. Illinois*, 405 US 645, 651; 92 S Ct 1208, (1972).

n) Parent's rights have been recognized as being "essential to the orderly pursuit of happiness by free man." *Meyer v. Nebraska*, 262 US 390; 43 S Ct 625, (1923).

o) The U.S. Supreme Court implied that "a (once) married father who is separated or divorced from a mother and is no longer living with his child" could not constitutionally be treated differently from a currently married father living with his child. *Quilloin v. Walcott*, 98 S Ct 549; 434 US 246, 255^Q56, (1978).

p) The U.S. Court of Appeals for the 9th Circuit (California) held that the parent-child relationship is a constitutionally protected liberty interest. (See; Declaration of Independence – life, liberty and the pursuit of happiness and the 14th Amendment of the United States Constitution — No state can deprive any person of life, liberty or property without due process of law nor deny any person the

equal protection of the laws.) *Kelson v. Springfield*, 767 F 2d 651; US Ct App 9th Cir, (1985).

q) The parent-child relationship is a liberty interest protected by the Due Process Clause of the 14th Amendment. *Bell v. City of Milwaukee*, 746 f 2d 1205, 1242^Q45; US Ct App 7th Cir WI, (1985)[1].

r) No bond is more precious and none should be more zealously protected by the law as the bond between parent and child." *Carson v. Elrod*, 411 F Supp 645, 649; DC E.D. VA (1976).

s) A parent's right to the preservation of his relationship with his child derives from the fact that the parent's achievement of a rich and rewarding life is likely to depend significantly on his ability to participate in the rearing of his children. A child's corresponding right to protection from interference in the relationship derives from the psychic importance to him of being raised by a loving, responsible, reliable adult. *Franz v. U.S.*, 707 F 2d 582, 595^Q599; US Ct App (1983).

t) A parent's right to the custody of his or her children is an element of "liberty" guaranteed by the 5th Amendment and the 14th Amendment of the United States Constitution. *Matter of Gentry*, 369 NW 2d 889, MI App Div (1983).

u) Reality of private biases and possible injury they might inflict were impermissible considerations under the Equal Protection Clause of the 14th Amendment. *Palmore v. Sidoti*, 104 S Ct 1879; 466 US 429.

v) Legislative classifications which distributes benefits and burdens on the basis of gender carry the inherent risk of reinforcing stereotypes about the proper place of women and their need for special protection; thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination

---

[1] I haven't found the case law *Bell v. City of Milwaukee*, 746 f 2d 1205, 1242^Q45; US Ct App 7th Cir WI, **(1985)**. However, I am citing exactly the same way as it is on the Internet.

Complaint for Damages.

against women must be carefully tailored. the state cannot be permitted to classify on the basis of sex. *Orr v. Orr*, 99 S Ct 1102; 440 US 268, (1979).

w) The United States Supreme Court held that the "old notion" that "generally it is the man's primary responsibility to provide a home and its essentials" can no longer justify a statute that discriminates on the basis of gender. No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas. *Stanton v. Stanton*, 421 US 7, 10; 95 S Ct 1373, 1376, (1975).

x) Judges must maintain a high standard of judicial performance with particular emphasis upon conducting litigation with scrupulous fairness and impartiality. 28 USCA § 2411; *Pfizer v. Lord*, 456 F.2d 532; cert denied 92 S Ct 2411; US Ct App MN, (1972).

y) The Constitution also protects "the individual interest in avoiding disclosure of personal matters." Federal Courts (and State Courts), under Griswold can protect, under the "life, liberty and pursuit of happiness" phrase of the Declaration of Independence, the right of a man to enjoy the mutual care, company, love and affection of his children, and this cannot be taken away from him without due process of law. There is a family right to privacy which the state cannot invade or it becomes actionable for civil rights damages. *Griswold v. Connecticut*, 381 US 479, (1965).

z) The right of a parent not to be deprived of parental rights without a showing of fitness, abandonment or substantial neglect is so fundamental and basic as to rank among the rights contained in this Amendment (Ninth) and Utah's Constitution, Article 1 § 1. *In re U.P.*, 648 P 2d 1364; Utah, (1982).

Source:

http://www.parentsinaction.net/english/Legal/Constitutional_Right_to_be_a_Parent.htm

Complaint for Damages.

1      **59. Second Cause of Action.** Deprivation of Liberty and Property without the Due

2   Process of the Law in violation of both the Substantive Due Process Clause and the Procedural

3   Due Process Clause of the Fifth Amendment to the U.S. Constitution.

4

5      **60. Third Cause of Action.** Subjecting me to a cruel and unusual punishment (living in a

6   homeless shelter, and other facts) in violation of the Eighth Amendment to the U.S. Constitution.

7

8      **61. Fourth Cause of Action.** Subjecting me to slavery and involuntary servitude (taking

9   care of elderly people) in violation of the Thirteenth Amendment to the U.S. Constitution.

10

11      **62. Fifth Cause of Action.** Defamation about the reasons of the termination of my

12   employment from the Raymond G. Murphy VAMC in violation of the First Amendment to the

13   U.S. Constitution and in violation of the California Labor Code Sections 1050 and 1054.

14

15      **63. Sixth Cause of Action.** Deprivation of my civil rights pursuant to 42 U.S.C. § 1983.

16

17      **64. Seventh Cause of Action.** Civil Conspiracy in violation of 42 U.S.C. § 1985.

18

19      **65. Eighth Cause of Action.** Discrimination against my Russian origin. I found multiple

20   case laws where it was obvious that Alsup treated Caucasian Americans, African-Americans, and

21   Mexicans with fairness and dignity. Contrary, maybe because I am Russian, Alsup always

22   exhibited fierce hate towards me, and he always denied all my prayers for relief.

23

24      **66. State Causes of Action.** In this Original Complaint, I will not explicitly list the State

25   Causes of Action. I preserve the right to amend my pleading, and I preserve the right to list the

26   State Causes of Action.

27

28

Complaint for Damages.

**67. Criminal Causes of Action**. As a civil Plaintiff, I am ineligible to bring a criminal lawsuit against Alsup. Therefore, I am respectfully asking the U.S. District Court for the Northern District of California to initiate a criminal lawsuit against Alsup for the violations of:

1) 18 U.S.C. Chapter 73 – Obstruction of Justice

2) 18 U.S.C. § 241 (conspiracy)

3) 19 U.S.C. § 246 (deprivation of my right to work on account of sex.)

**Prayer for Damages.**

68. Because of Alsup's criminal actions that were intentionally and maliciously aimed to deprive me of my right to worm on account of sex, I have severely suffered from the absence of job, from the absence if money, from the absence of any basic civil rights, from the absence of a home, from the absence of a car, from the absence of an opportunity to study, to get a better paid job, from the absence of an opportunity to continue a treatment of my infertility, from the absence of the opportunity to go to Russia, and from a severe tort and humiliation.

69. During the litigation of my Amended Complaint No. 3:18-cv-03748-JCS before Alsup, I cited the case law *Juarez v. AutoZone Stores, Inc.,* Case No. 08-CV-00417-WVG (S.D. Cal. Nov. 17, 2014) that was a court case in the United States District Court for the Southern District of California which is believed to be the largest single-plaintiff employment verdict in United States history at $185,872,719.52.

70. I am respectfully asking the U.S. District Court for the Northern District of California to award me with the same amount of damages against Alsup $185,872,719.52.

71. I am respectfully asking the U.S. District Court for the Northern District of California to issue any Order that the Court deems just and proper.

Complaint for Damages.

**Verification.**

72. I, a Pro Se Plaintiff Tatyana Drevaleva, am a Party to this action. I have prepared and read the foregoing Complaint for Damages and know its contents. The facts alleged in the Complaint for Damages are within my own knowledge and I know these facts to be true.

I declare under penalty of perjury and under the Federal laws that the foregoing is true and correct and that this verification was executed on July 12, 2021 at San Francisco, California.

Respectfully submitted,

s/ Tatyana Drevaleva

Plaintiff Pro Se

July 12, 2021.

Complaint for Damages.